This is an appeal from a decree of the Orphans Court sustaining certain objections to the report of a special master. The matter relates to the validity of a gift of about $10,000, made by the decedent, Nellie Curley, to her daughter, Mae Agnes Curley. The gift is attacked on the ground of undue influence.
The gift was made by the transfer to the daughter of an account in the Trust Company of New Jersey, which was effected by a personal visit of the donor to the trust company. The gift was made some four months before Mrs. Curley's death, and at a time when she was in feeble health, but when there was no impairment of her mental faculties. The donee was one of two daughters of Mrs. Curley. The mother lived with this daughter, who for a long time, prior to the gift, had nursed her mother assiduously, and showed her every care and attention.
There was another daughter who lived elsewhere and who does not join in the exceptions to the special master's report filed by the two sons of the donor. Mrs. Curley did not dispose of all her property by this gift. She left a will which was not contested and which disposes of the remainder of her estate.
The special master found that the two sons, far from being a comfort to their mother, were a source of trial and disappointment *Page 399 
to her. He found that both were of intemperate habits and that because of her disapproval she did not intend to leave them anything. He further found that the gift was fully justified by the feeling of love and affection because of the daughter's care for the mother, and that there was no evidence of undue influence or fraud. He found that there was ample proof of visitation of the other children to the mother, definite proof that the mother knew what she was doing and that she spoke of the gift and her reasons for making it.
Certain insurance policies claimed by Mae Agnes Curley as a gift inter vivos were found by the special master not to be sustained as such. As to certain other policies, he found the court had no jurisdiction to adjudicate her rights. No exceptions were taken from the findings as to the insurance policies; and the decree of the Orphans Court having sustained these findings, the question of the insurance policies is not before this court.
The Orphans Court, however, did sustain the exceptions to the findings as to the validity of the gift of the bank deposit. The ground stated was that a confidential relationship existed between the donor and the donee, in which the donee was the dominant and the donor the subordinate party, and that therefore the burden was upon the donee to show by a preponderance of evidence that there was no deception, undue influence, unfairness, or concealment, and that the transaction was thoroughly understood by the donor.
This decision necessarily disagreed with some of the findings of the special master, but is fully justified by the evidence so as to bring the transaction within the well established rules. The leading case is that of In re Fulper's Estate, 99 N.J. Eq. 293.
Here the court says (at p. 302), "In all transactions between persons occupying relations, whether legal, natural, or conventional in their origin, in which confidence is naturally inspired, is presumed, or in fact reasonably exists, the burden of proof is thrown upon the person in whom the confidence is reposed and who has acquired an advantage, to show affirmatively, not only that no deception was practiced therein, no undue influence used, and that all was fair, open, and voluntary, but that it was well understood." *Page 400 
And (at p. 314), "* * * Among the confidential relationships natural in their origin are, of course, those of parent and child. Where the father is mature and a son is young, the latter is the dependent and the former is the quasi-fiduciary. When the son is matured and the father is dependent, the situation is reversed. * * *" In Kelso v. Kelso, 96 N.J. Eq. 354, the court said: "Either the bodily or mental condition of a father may reverse the original relation and make his child the dominant one of the two."
The evidence clearly shows that although the donor was not shown to have failed in mental powers, she was clearly in a confidential relationship with her daughter, the latter was in a dominant position. She herself stated that the mother confided in her and relied on her judgment. Shortly after the notification by the bank that the subject-matter of the gift, the proceeds of a sale of bonds, were to the credit of the mother. The two went to the trust company together and the credit was transferred from the sole account of the mother, to a joint account with the daughter. Only a few minutes later, the mother and daughter went to another official of the trust company, and the account was transferred from a joint account to the sole account of the daughter. There was no evidence whatever that the mother had any independent advice. The special master lays stress upon testimony to the effect that the mother referred to the gift as being in pursuance of her intention not to leave her two sons anything because of their misconduct. This conclusion is scarcely warranted, by reason of the fact that by will previously made, the mother had left something to her two sons and this will was never revoked. There are other contradictions and inconsistencies in the testimony of appellant's witnesses, particularly with regard to the intemperate habits of the two sons and the mother's alleged lack of affection for them.
Under these circumstances, in my opinion, the Orphans Court was fully justified in finding that appellant had not met the burden of proof imposed by the relationship of the mother and daughter.
The decree will be affirmed. *Page 401